IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EXTREME OUTDOORS LIMITED, INC., § <br> GREG PATTERSON, and § <br> JEROME HARRIS, § <br> § <br> Plaintiffs, § <br> § <br> V. § <br> § <br> GARY YAMAMOTO CUSTOM § <br> BAITS, INC., GARY Y. YAMAMOTO, § <br> KENNETH J. SASAKI, ROBERT § <br> UHRIG, MEGASTRIKE, INC., § <br> WABASH METAL PRODUCTS, INC., § <br> and LEE BAILEY, JR., § <br> § <br> Defendants. § | CIVIL ACTION NO. H-08-1259 |

**MEMORANDUM AND OPINION**

On May 14, 2007, Extreme Outdoors Limited, Inc., Greg Patterson, and Jerome Harris sued Gary Yamamoto Custom Baits, Inc., Gary Y. Yamamoto, Kenneth J. Sasaki, Robert Uhrig, Megastrike, Inc., Wabash Metal Products, Inc., and Lee Bailey, Jr. in state court, asserting claims for breach of contract, fraud, tortious interference with an existing contract, breach of fiduciary duty, and conversion. The defendants filed a notice of removal on April 24, 2008. (Docket Entry No. 1). The defendants removed on the ground that on March 24, 2008, plaintiff Greg Patterson gave a deposition from which the defendants "were able to ascertain that Plaintiffs joined Defendant Gary Yamamoto solely to defeat diversity jurisdiction." (Docket Entry No. 1 at 2). The defendants argue that "[t]here is no reasonable

basis for believing that Plaintiffs could recover from Defendant Gary Yamamoto in state court." (*Id.* at 2).

The plaintiffs have moved to remand on the grounds that not all the defendants timely and properly consented to removal, that removal was untimely, and that Gary Yamamoto was properly joined as a defendant. (Docket Entry No. 10). The defendants have responded. (Docket Entry No. 9).

Based on the pleadings, the motion, the response, and the applicable law, this court grants the plaintiffs' motion to remand. The reasons are explained below.

**I.     Background**

Extreme Outdoors Limited, Inc. ("Extreme Outdoors") is a Texas corporation. Greg Patterson is a South Carolina citizen. Jerome Harris is a Pennsylvania citizen. Gary Yamamoto Custom Baits, Inc. ("Yamamoto Custom Baits") is an Arizona corporation. Gary Yamamoto is a Texas citizen. Kenneth Sasaki is an Arizona citizen. Robert Uhrig is a New Jersey citizen. Megastrike, Inc. ("Megastrike") is a New Jersey corporation. Wabash Metal Products, Inc. ("Wabash") is an Indiana corporation. Lee Bailey, Jr. is an Alabama citizen. Gary Yamamoto is the only nondiverse defendant.

Jerome Harris met Robert Uhrig, Megastrike's owner, in February 2004. Megastrike produces a fish "attractant." Harris and Uhrig entered into a contract. Harris agreed to reformulate the attractant in exchange for a royalty payment of $0.25 per tube of attractant that Megastrike sold. The plaintiffs allege that due to Harris's success in reformulating the

2

attractant, Uhrig "obtained a very large contract with Yamamoto Custom Baits." (Docket Entry No. 1, Attachment 20 at 3). The plaintiffs assert that Uhrig paid Harris $1,000 in July 2004 but has not made any royalty payments since then.

Patterson and Harris met in July 2004 and began to discuss designing a new tungsten fishing weight that could be produced more cheaply than traditional fishing weights. Patterson disclosed this idea to Ken Sasaki and Larry Evans of Yamamoto Custom Baits, who both expressed interest. Patterson formed Extreme Outdoors on September 29, 2004 to manufacture and sell the new tungsten weights. Harris has a 30% interest in Extreme Outdoors.

In August 2004, Lee Bailey offered to sell Patterson his company, Cavitron, Inc. ("Cavitron"). Bailey traveled to Madisonville, Texas in October 2004 to finalize Cavitron's sale to Patterson. While in Madisonville, Bailey expressed interest in Extreme Outdoors's new tungsten weights and learned more about their production. The sale of Cavitron never closed because Bailey backed out of the deal. Bailey and Uhrig subsequently contacted Harris several times, inviting Harris to end his partnership with Patterson and to join them in producing a line of tungsten weights. Harris refused.

In November 2004, Sasaki began contacting Patterson to inquire about Extreme Outdoors's new weights. In February 2005, Sasaki called Patterson and told him that Yamamoto Custom Baits wanted to be the exclusive distributor of Extreme Outdoors's product and would purchase all the fishing weights that Extreme Outdoors could produce.

The parties began negotiating design, pricing, packaging, and marketing, as well as the different weight sizes that Extreme Outdoors should offer.  Patterson bought two custom-made compression machines from Wabash to begin producing weights for Yamamoto Custom Baits.

In July 2005, Patterson provided Yamamoto Custom Baits with a variety of weight samples to display at the Yamamoto Custom Baits booth at an annual trade show in Las Vegas.  At the trade show, Patterson asked Sasaki to prepare a written contract to memorialize the parties' agreement.  Sasaki said he would prepare a contract the following week.

Patterson never received a written contract.  He telephoned Sasaki several times, but Sasaki did not return the calls.  Extreme Outdoors fell behind on its bills.  Wabash eventually repossessed the compression machines that it had sold to Extreme Outdoors.

In their First Amended Complaint, the plaintiffs allege they entered into a contract with Yamamoto Custom Baits, Gary Yamamoto, and Kenneth Sasaki (the "Yamamoto Defendants").  The plaintiffs allege that under the contract (the "Yamamoto Contract"), the Yamamoto Defendants would be the exclusive distributor for the plaintiffs' fishing weights and would purchase all the fishing weights that the plaintiffs could produce.

The first amended complaint also alleges that Harris entered into a contract with Uhrig and Megastrike (the "Megastrike Defendants").  Under this contract, the Megastrike Defendants would pay Harris a royalty of $0.25 per tube of fish attractant that Megastrike

sold in exchange for the time and expertise Harris would use in reformulating the product.

The plaintiffs sued in Texas state court on May 14, 2007, alleging that the Yamamoto Defendants and Megastrike Defendants breached their respective contracts and that the Yamamoto Defendants had engaged in fraudulent misrepresentation. The plaintiffs also alleged that defendants Uhrig and Lee Bailey tortiously interfered with the Yamamoto Contract. In addition, the plaintiffs alleged that Wabash Metal Products sold custom compression machines that the plaintiffs had purchased and rightfully owned. The plaintiffs sued Wabash for conversion, asserting a "right to immediate possession of the surplus from any sale." (Docket Entry No. 1, Attachment 20 at 13).

The defendants removed on March 24, 2008 on the basis of diversity jurisdiction, asserting that a deposition taken within a year after suit was filed revealed that the only nondiverse defendant was improperly joined. This remand motion followed.

**II.     The Legal Standard**

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed. 28 U.S.C. § 1441. The removing party bears the burden of establishing that a state court suit is properly removable to federal court. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995). Doubts about the propriety of removal are to be resolved in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).

Title 28 U.S.C. § 1446 governs the procedure for removal. Section 1446(b) provides that "[t]he notice of removal ... shall be filed within thirty days after the receipt by the defendant ... of a copy of the initial pleading." 28 U.S.C. § 1446(b). The first paragraph of section 1446(b) applies to cases that are removable as initially filed; the second paragraph applies to cases that become removable after filing. *See Johnson v. Heublein*, 227 F.3d 236, 241 (5th Cir.2000); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir.1992). The second paragraph provides:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). Under the second paragraph of section 1446(b), the thirty-day removal clock begins to run when a defendant receives a pleading, motion, or other paper that reveals on its face a basis for federal jurisdiction. *Chapman*, 969 F.2d at 164; *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994). A response to a discovery request may be an "other paper from which it may first be ascertained that the case is one which is or has become removable," triggering the thirty-day period under § 1446(b). *See Chapman*, 969 F.2d at 164 (interrogatory answer was an "other paper"); *see also Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759, 761 (5th Cir.2000) (postcomplaint demand letter was an

6

"other paper"); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996) (a transcript of deposition testimony was an "other paper").

Under the unanimity rule, all properly served defendants must timely join in or consent to the removal. *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir.1992). In cases with multiple defendants, the thirty-day period under section 1446(b) begins to run when the first defendant is served or, if the suit is not initially removable, when the first defendant is served with or receives a pleading or other paper that reveals on its face that the case has become removable. *Gillis v. St. of La.*, 294 F.3d 755, 759 (5th Cir.2002); *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir.1988); *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir.1986). If the first-served defendant does not timely remove, a subsequently added or served defendant cannot remove because that defendant cannot fulfill the unanimity requirement. *Brown*, 792 F.2d at 482.

**III.  Analysis**

The plaintiffs argue that this suit should be remanded to state court because not all the defendants timely and properly consented to removal; the Yamamoto Defendants did not timely remove; and the Yamamoto Defendants have failed to show "that there is no possibility that Plaintiffs can recover from Gary Yamamoto, individually." (Docket Entry No. 10 at 2). Because not all the defendants timely and properly consented to removal, this court does not reach the parties' arguments as to timeliness and improper joinder.

7

### A. Consent to Removal

The defendants' notice of removal states that "[a]ll other defendants who have been served with summons consent to the removal of this case to federal court." (Docket Entry No. 1 at 3). Citing *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1262–63 n.11 (5th Cir. 1988), and several other cases from district courts in the Fifth Circuit, the plaintiffs argue that this statement "is insufficient to establish federal jurisdiction over this cause." (Docket Entry No. 10 at 5). The plaintiffs further assert that "it is too late for Defendants to cure this procedural defect" because "more than 30 days have elapsed since the Yamamoto Defendants allegedly received the transcript which caused them to remove this lawsuit." (*Id.* at 5).

In response, the defendants distinguish *Getty* on the ground that it involved removal based on the initial pleadings under the first paragraph of section 1446(b), rather than removal due to "other paper" under the second paragraph of section 1446(b). The defendants also argue that the notice of removal "included written notice" of the consent of "all other defendants" except for Bailey, and that Bailey's written consent "was not required because he is a nominal party." (Docket Entry No. 18 at 8).

The defendants cite no case law to support their argument that *Getty* is limited to removal based on the initial pleading under the first paragraph of section 1446(b). The *Getty* court placed no such limit on the requirement of "some timely filed written indication from each served defendant . . . that it has actually consented to [removal]." *Getty*, 841 F.2d at

8

1262 n.11; *accord Doe v. Kerwood*, 969 F.2d 165, 168 ("[I]f there is more than one defendant, then the defendants must act collectively to remove the case."). Although it is not necessary for each defendant to sign the original petition for removal, the Fifth Circuit has stressed that some written indication of consent is necessary because "[o]therwise, there would be nothing on the record to 'bind' the allegedly consenting defendant." *Getty*, F.2d at 1262 n.11. *Compare Martinez v. Entergy Corp.*, No. Civ. A. 04-1027, 2004 WL 2661815, at *1–2 (E.D. La. Nov. 19, 2004) (remanding the case because the notice of removal contained no indication that all defendants consented to removal or that the codefendants had authorized the removing defendant "to act on their behalf in representing that they joined in the removal"); *Smith v. Union Nat'l Life Ins. Co.*, 187 F. Supp. 2d 635, 640 (S.D. Miss 2001) (noting that "each defendant who has been served must at least communicate its consent to the court no later than thirty days from the day on which the first defendant was served" and granting the plaintiffs' motion to remand because a codefendant failed timely to express to the court its consent to removal) *with Frye v. Airco, Inc.*, 269 F. Supp. 2d 743, 745 (denying plaintiffs' motion to remand in part because the removing defendant filed "a document entitled Notice of Filing Joinders and Consents to Removal, which listed each of the defendants then served, along with an original signed pleading from each served defendant signifying such defendant's consent to removal and joinder in the removal petition").

The defendants' notice of removal states that "[a]ll other defendants who have been served with summons consent to the removal of this case to federal court." (Docket Entry

9

No. 1 at 3). Under *Getty*, such a statement, without more, is insufficient to show all the defendants' "actual joinder in or consent to the original removal petition." *Getty*, 841 F.2d at 1262 n.11 (noting that although the removal petition stated that a codefendant had consented to removal, the petition failed to state that the codefendant had authorized the removing defendant to represent to the court that the codefendant had consented, such that "there was no adequate allegation or showing of [the codefendant's] actual joinder in or consent to the original removal petition"). The notice of removal does not contain either a written statement from the codefendants consenting to removal or a written statement that the codefendants authorized the removing defendant to represent their consent to the court. The defendants' submission of letters expressing consent from Wabash, Megastrike, and Uhrig with their response to the plaintiff's motion to remand does not cure their failure to provide timely written indication of consent from all the defendants. *See id.* (finding that a defendant's attempt to file its joinder and consent to removal twenty-one days after the thirty-day removal period had expired did not cure the procedural failure to provide the court a timely written indication of the defendant's consent to removal); *Hammonds v. Youth for Christ USA*, No. CIVA SA05CA-0531-FB, 2005 WL 3591910, at *4 (W.D. Tex. Aug. 16, 2005) (finding that the defendant's "late-filed formal consent did not cure the procedural defect [of untimely written indication of consent to removal]") (citing *Smith*, 187 F. Supp. 2d at 645); *accord Spillers v. Tillman*, 959 F. Supp. 364, 372 (S.D. Miss. 1997) ("[O]nce the

30-day period has expired, amendment is not available to cure a substantive defect in removal proceedings.").

### B. Nominal Parties

The defendants argue that the consent of defendant Bailey did not need to give written consent because he is a nominal party. Whether a party is "nominal" for removal purposes depends on "whether in the absence of the [defendant] the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349,* 427 F.2d 325, 327 (5th Cir. 1970) (citation omitted), *quoted in Acosta v. Master Maintenance and Constr. Inc.*, 452 F.3d 373, 379 (5th Cir. 2006). Bailey, however, is not the only codefendant who failed to provide an adequate statement consenting to removal. Even if the nominal party exception to the rule requiring all properly served codefendants to give proper written consent to removal applies, it does not preclude remand.

Because the properly served defendants did not all provide a timely written indication of their consent to removal, this court grants the plaintiffs' motion to remand.

### C. Fees for Improvident Removal

Title 28 U.S.C. § 1447(c) authorizes the court to "require payment of just costs and any actual expenses, including attorney fees incurred as a result of removal." The Supreme Court has clarified that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for

seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). The record before this court does not show that the defendants' arguments were objectively unreasonable. The motion for fees is denied.

**IV.     Conclusion**

The plaintiffs' motion to remand is granted. The plaintiffs' request for attorneys' fees and expenses incurred in filing the motion to remand is denied. This case is remanded to the 12th Judicial District Court of Madison County, Texas.

SIGNED on July 21, 2008, at Houston, Texas.

_____
            Lee H. Rosenthal
       United States District Judge